May it please the Court, I am Joshua Glellen, appearing on behalf of Mr. Dupree. Mr. Castro, as I'm sure you recognize, is merely a nominal party and has no interest in the outcome. Mr. Dupree has never sought an award of fees payable by Mr. Castro or even reimbursement of his expenses by Mr. Castro. First, to answer the Court's questions, if I may go to the second question first. No, there is nothing at all in the record to show the reason for Mr. Dupree's withdrawal. He had expended nearly 100 hours of his and his associates' time and more than $3,000 in expenses at that point. It was more than five months before the scheduled hearing, so there was plenty of time for Mr. Castro to secure other counsel, should he choose to do so. And Mr. Castro was given notice both before Mr. Dupree's motion to withdraw and of that motion and did not object on either occasion. Is there any authority that suggests that there's still eligibility for attorney fees under the Longshore Act once you've withdrawn? There is no authority under the Longshore Act, and we have been unable to find any under any other similar fee-shifting regime. This fee-shifting regime is, if not unique, at least highly unusual in two respects. First, the attorney may collect no fees whatsoever from the client or otherwise in the absence of ultimate success. And second, there are no effective agreements with the client with respect to fees. That's highly unusual. And, of course, the statute provides explicitly, unlike almost all other federal fee-shifting statutes, that the fees belong to the attorney, not to the client. That's figured prominently in some of the Supreme Court's decisions that the other fee-shifting statutes are not like that. The fee belongs to the client. When you say there's no agreement on fees between the client and the attorney, is that by statute you are not allowed to have an agreement, or in this case there just was no agreement? No. There's always some kind of an agreement, but it does not provide for how the amount of fees is to be determined because no such agreement can be effective, and that is by statute. And that's because the fees belong to the attorney, not the client? Is that why you're saying that? I'm not sure I understand what you're getting at there. No, it's because the statute provides that, in fact, it's a federal crime to accept one penny or any form of recompense from the client without getting it approved through the administrative process or by the tribunal before whom the services were performed. But could you have an agreement that says the client can't agree to a settlement unless the attorney gets fees? It would seem that that might well be permissible under the statute, but it also might create a conflict of interest between the attorney and the client from the outset. So I don't know of anyone who has ever had such an agreement with a client under the Longshore Act, with a claimant client under the Act. Mr. Gillian? Yes. I'm curious to know how you feel or how you argue that your client is entitled to fees considering the language in Section 3E. How do you argue that benefits were received imposed under the Longshore Act considering that the settlement had no fees, no amounts imposed at all? Yes. Well, the settlement agreement as approved by the ALJ, I think, is facially self-contradictory and a plain subterfuge. It says the client shall receive the basis for the settlement is the client's desire to receive a lump sum and the parties want to compromise. And then it says the client, Mr. Castro, shall receive a lump sum of zero. Well, I don't think zero is a lump sum. That's an awfully small lump. That's no lump whatsoever. And the agreement also makes reference to the fact that there was this $4,000 settlement under the state law, which, as I hope our brief makes... Doesn't 3E presuppose that the amount received has to be under the Longshore Grant Act? Well, the fee-shifting statute simply refers to the successful prosecution of the claim. But you're dealing with the Longshore Grant Act. You're not dealing with the California Work With Compensation Statute. That's right. And the two claims were filed at the same time and were concurrently applicable. There was never any contention by the defense. They denied liability, but they did not ever raise any defense that this is compensable under the state law but not under the Longshore Act. Of course, such a contention is possible if the coverage of the Longshore Act is an issue, but it's not an issue that it's covered under the state law. How would you explain what was received under the Federal statute? The $4,000 was received in settlement of both of the concurrent, overlapping, fully overlapping claims. It was one sum to settle both claims, which had the same value as one another, were for the same 30-odd days of temporary total disability based on the same injury, the same specific injury on the same job against the same employer. The two settlements were signed, were executed at the same time, even though the employer did not submit the Longshore settlement for approval until five months later or four months later once they had received the approval from the state authorities. But it was one sum of money to settle both claims. And it wasn't written that way. So even if we think that it was subterfuge, as you say, and they intended to avoid fees under the Longshore Act, what prohibits them from doing that? Well, I hope a realistic assessment of what went on is the only thing to prevent them from doing that. Otherwise, there is the representation of claimants under the Longshore Act in the United States. And in states with concurrent jurisdiction, it cannot proceed, cannot happen. It's not a viable practice. And Congress established this private attorney general regime for the enforcement of the Longshore Act. Are you familiar with the Supreme Court case Evans v. Jeff that's about attorneys' fees under 1983? Yes, I am. Because that case, I believe, says that you can actually have a contract for a settlement that writes out the attorneys' fees for the attorneys. And so I don't understand how this is different. I think what's different is that that is an attorney, a fee-shifting regime in which the fees belong to the client, unlike this one where the fees are payable directly to the attorney. But if that's true and the attorney has stopped choosing to be in the room, I don't know what's supposed to happen here. I mean, once the attorney – I mean, maybe if the attorney were in the room, the weird statute, it's not a conflict, I have a right to attorneys' fees, and so I have a claim in the settlement. I mean, I agree that's a weird thing ethically, but the statute is unusual. But the attorney's not in the room because, for whatever reason, he withdrew. So now where does that leave us? It leaves us with the need, I would say, to recognize the actual nature of what is going on, which the ALJ, I will say, absolutely did recognize when he approved this arrangement as a Section 8i settlement of the Longshore Act claim, not a denial of the claim, which is what a take-nothing would be. This is a Section 8i settlement that says this is a compromise because the claimant wants to receive a lump sum, and it was on that basis that the ALJ approved it. To call that a take-nothing is to deny the plain reality of it. And once we recognize the reality of it, that this $4,000 was to settle both of the concurrent claims at the same time, which is actually, you know, it's explicit in parts of that settlement agreement, even though another part of the – excuse me, Judge Schroeder. I'm sorry. But was there a separate agreement with respect to the State claim? Yes. There were two settlement agreements. Right. Yes. Signed at the same time. And it said $4,000. Yes. And this one says – and the – this one says the claimant shall receive a lump sum of zero, but it says that after saying, the employer is entitled to the $4,000 credit for the State law settlement. So it was clear to the ALJ when he approved that settlement. This wasn't a $0 settlement. It was a $4,000 settlement of both claims at the same time. Despite the fact that it says – Sorry. You're over your time. So, Judge Torea, do you have any further questions for counsel? No, I'm fine. Thank you. I'll give you a minute for rebuttal, but you're over your time now. Good morning, Your Honors. May it please the Court, my name is Alan Chang, and I represent the Respondents in this case, Homeport Insurance and SSA Terminals. This is a case involving an attorney-fee dispute where the administrative law judge and the Benefits Review Board of the Department of Labor soundly held that Mr. Dupree was simply not entitled to a fee award. Hence, the issue before Your Honors is whether the Benefits Review Board's decision contained errors of law or lacked substantial evidence in support. The record in this case in particular demonstrates that the BRB should be affirmed. Respondents respectfully request that the Ninth Circuit uphold the BRB's decision for three primary reasons. First, the plain language of the party's 8i agreement substantiates the BRB's decision. Secondly, Petitioner failed to meet his burden in this case under the Longshore Act of demonstrating a successful prosecution. And third, Petitioner's policy arguments that he asserts in his brief are both legally and factually unsupported. The ALJ and the BRB both properly interpreted the plain language of the party's 8i agreement in this case. Despite what Petitioner contends, the BRB and ALJ correctly found that the settlement of the Longshore claim in this case was a take-nothing agreement. And he's — How does it make sense, though? Because aren't the claims basically equivalent in terms of if there's liability under a State law and there would have been liability under the Longshore Act? Is there any difference that would have explained why there's a payment on one and not the other? There is a difference, Your Honor. And I believe that would be helpful for the Court to understand if I may explain. Under Section 4660 of the California Labor Code, compensation awards for permanent disability under the California system are based on a permanent disability rating schedule. Under the Longshore Act, permanent disability claims are predicated upon wage loss. Section 8 of the Longshore Act specifically requires claimants to demonstrate a loss of wage earning capacity to be entitled to permanent disability awards. Does he have a permanent disability? I thought he had a temporary back injury. That is what is being claimed under the Longshore Act. So he does not have a permanent disability. Therefore, however, under State claims, this permanent disability rating schedule almost immediately determines permanent disability awards through the type of work that's employed, the type of injury, the body part, the age. So you're saying even if it's a temporary injury, you apply the permanent injury schedule? Not exactly. Under State law and the California Labor Code, injured workers are entitled to permanent disability awards if they qualify under the rating schedule. And in this case, that happened to be the case. There was nominal value, an amount that was represented by the settlement of the State claim, which ended up settling for $4,000. This was based and represented by a permanent disability compromise on the State claim. As far as the Longshore claim was concerned, there was no permanent disability available because there was no loss in wage earning capacity. The temporary total disability claim, which represented 32 days total of missed work, was highly, highly suspect based on the evidence that was uncovered through the discovery process at the ALJ level. Respondent took the position at the ALJ level and, for that matter, the BRB level and currently, that the Longshore claim simply had no value. The State claim, because of the Labor Code, Section 4660, was a different story. There was potential for a permanent disability award. Therefore, the State case was settled separately and first for $4,000 and the Longshore case was settled separately for $0. Is there something in the record that reflects this permanent disability schedule? Your explanation you just gave, can we confirm that anywhere in the record? The 8i agreement, Your Honors, that would be reflected in Respondent's excerpts of record and the plain language does refer to a prior $4,000 State settlement that was exclusive to the State settlement. The Longshore claim, which the 8i also confirms, was limited to the $0 take Right. I mean, I know it says that, but is there something that goes deeper and explains that there is a difference? We were considering the State claim to be about this permanent disability and he had a claim under the schedule that you just talked about. Is there anything about that in the record? Unfortunately, not in detail, Your Honors. There was a compromise and release agreement, which is a form statement that was submitted to the Workers' Comp Appeal Board that was approved at the State level. It was essentially providing monies in exchange for a compromise and release of the State claim. I don't believe that document is part of the current record before the Court. However, it was submitted and approved. That was documented within the 8i and referenced within the 8i, and the 8i is part of the current record before the Court. The BRB's decision should further be upheld because Petitioner failed to demonstrate a successful prosecution of the Longshore Act, which was the Petitioner's burden of proof in this case. In Richardson v. Continental Grain Company, this Court defined successful prosecution under Section 28A of the Longshore Act, which is where fees are being claimed in this matter, as actual relief that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. The claimant is required to obtain something of substance, and that something of substance is to be obtained under the Longshore Act. As page 63 of Respondent's Excerpt of Reference. We think, because there's nothing in the record to support the explanation you gave a moment ago, that what really happened here is it was written to avoid attorneys' fees. Is that legitimate? Can we enforce it anyway? The BRB's decision? No, I mean, if you wrote, I don't know if it was you, if counsel here agreed to these settlement agreements and crafted them specifically to avoid attorneys' fees payments under the Longshore Act, is that a legitimate move to make? And if we think that's what really happened here, can we still enforce the decision of the agency? It is legitimate under these circumstances, Your Honor. There was value to the state claim as stated. There was no value to the Longshore claim, even despite Petitioner's accusatory arguments. No, no, but you're begging the hypo. If the hypo is, really, there was a $4,000 settlement here for both claims, but they wrote it to avoid paying attorneys' fees, is that okay? Is there anything in the law that prohibits them from choosing to settle the case that way? There's nothing in the law that prohibits that scenario, Your Honor, at least based on the law that's available up to date. Petitioner's still held to this burden of a successful prosecution of a claim under these circumstances. That was simply not met. I got reversed in the Jeff Fee case that upheld the settlement which waived attorneys' fees. I'm sorry to hear that, Your Honor. I still regret it. It happened. As far as the most recent issues that the Court brought to the party's attention to address, as far as Longshore-specific cases, I believe Petitioner's counsel was correct in saying that there wasn't fee-shifting regimes that were Longshore- specific as to the requirement of good cause for withdrawal or entitlement of fees. However, within the Ninth Circuit, the majority of the district courts have provided sound guidance, at least from a policy perspective, and that would involve the situation of attorney lien enforcement in contingency civil recoveries against a former client after he or she is recovered but post withdrawal. In those situations, the district courts have cited a case from the California Court of Appeal called a State of Falco, and the Falco case provided the analytical framework for that situation. Falco distinguished between mandatory and permissive withdrawals per California Rule of Professional Conduct 3700. And that Rule of Professional Conduct, Your Honor, is linked to this case because the record demonstrates that Mr. Dupree did cite that provision as a basis for his withdrawal in this case. Under the Falco analysis, if a withdrawal is a permissive withdrawal versus a mandatory withdrawal, heightened scrutiny is applied to determine whether an attorney may collect attorney's fees in quantum merit. Although absent good cause for permissive withdrawal, the fees are barred. The record in this case demonstrates that there was no mandatory grounds for Mr. Dupree to withdraw. He withdrew from a case that Respondent contends had almost no value or actually no value under the Longshore Act. He would not have been able to demonstrate his burden of a successful prosecution. He would not have been able to claim fees, and therefore he withdrew from the case. This would be a quintessential permissive withdrawal. And if the Court were to look to the Falco case, which district courts within the circuit have relied upon, they would see that under this situation and a permissive withdrawal, the substantial justification warranting the withdrawal is absent. Good cause is also absent. And with Falco's guidance, fees would not be recoverable in this situation either. Although you don't think we need to get there. I don't believe so, Your Honor. The successful prosecution and the language of the 8i agreement and the separate settlement of the State agreement for separate value would provide enough context to affirm the Benefits Review Board. As a closing note, the policy arguments cited in Petitioner's brief, I believe, are legally and factually unsubstantiated. There are no records cited. There are no case laws cited. And it is essentially argumentative and speculative. The concept of concurrent jurisdiction was met in this case. There was two separate claims. Mr. Castro settled both of those claims based on what their respective values were, and his rights were considered under both acts. Thank you very much, Your Honors. Thank you, counsel. I'll give you a minute for rebuttal. Thank you. Two quick points, if I may. First, with respect to Mr. Chang's earlier point, there was never any claim under either statute for any permanent disability, and the medical expert opinion, which Mr. Dupree secured at his expense, provided no basis for a claim of any permanent back disability, which would have been compensable under the State law, even if not under the Longshore Act. There never was any assertion of a right to permanent disability compensation, which might have been available. Yes, the standards are different under the two statutes. And so that was not in the case. The case was about the 32 days, or however many there were, of temporary total disability under each statute without distinction. Second, why is there no record evidence about the reasons for withdrawal? Because there was never any objection to the fee application on any basis that had to do with the reasons for the withdrawal. There was another contention that the fee application itself was untimely, but the administrative law judge rejected that, and the employer has never contended at any point on appeal that that was an alternative valid ground for denial of fees. So the only thing, the only objection that was pertinent was this objection that it was not a successful prosecution of the claim, and that was based entirely on this self-contradictory term in the Section 8i settlement application. Judge Toria, do you have any further questions? No, thank you. Thank you, counsel. Thank the court for its attention. The case is submitted.
judges: Torruella, Schroeder, Friedland